**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEVELOPERS SURETY &** | : | **Civil Action No. 1:12-CV-2216** |
| **INDEMNITY CO.** | : | |
| | : | **(Chief Judge Conner)** |
| **v.** | : | |
| | : | |
| **SHAHNAWAZ MATHIAS,** | : | |
| **DEBRA MATHIAS,** | : | |
| **EASTERN DEVELOPMENT &** | : | |
| **DESIGN, and CHARTER HOMES** | : | |
| **BUILDING COMPANY** | : | |

## <u>MEMORANDUM</u>

Presently before the court in the above-captioned matter is defendant

Charter Homes Building Company's motion to dismiss (Doc. 23) pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief

can be granted.  For the reasons that follow, the court will grant the motion in part

and deny it in part.

## I.    <u>Factual and Procedural Background</u>

The instant motion to dismiss comes before the court pursuant to Federal

Rule of Civil Procedure 12(b)(6).  Accordingly, the court will "accept all well-pleaded

facts in the complaint as true and view them in the light most favorable" to the

plaintiff.  <u>Carino v. Stefan</u>, 376 F.3d 156, 159 (3d Cir. 2004).

Plaintiff Developers Surety & Indemnity Co. ("DSIC") is an Iowa corporation

with its principal place of business in Irvine, California.  (Doc. 1 ¶ 1).  Defendants

Debra and Shahnawaz Mathias are Pennsylvania citizens residing in Red Lion,

Pennsylvania.  (<u>Id.</u> ¶¶ 2-3).  Defendants Eastern Development & Design ("EDD")

and Charter Homes Building Company ("Charter") are Pennsylvania businesses with their principal places of business in Red Lion and Lancaster, Pennsylvania, respectively. (Id. ¶¶ 4-5). At all times relevant to the instant matter, Shahnawaz Mathias was sole owner and principal of both EDD and non-party business, Slater & West, Inc. ("Slater"). (Id. ¶¶ 6-7).

Sometime in or near 2000, Shahnawaz Mathias, Debra Mathias, and EDD (collectively, "Indemnitor Defendants"), and Slater executed an indemnity agreement in favor of DSIC to induce DSIC to issue construction bonds for their benefit. (Id. ¶¶ 10-11; Doc. 1-2, Ex. A). The indemnity agreement, in pertinent part, states:

> In consideration of the execution and delivery by Surety of a Bond or any Bonds on behalf of Principal, Principal and Indemnitor shall pay all premiums charged by Surety in connection with any Bond . . . issued by Surety on behalf of Principal and shall indemnify and hold harmless Surety from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the maximum rate allowed by law, which Surety may sustain or incur by reason of or in consequence of the execution and delivery by Surety of any Bond on behalf of Principal, whether or not Surety shall have paid any amount on account thereof. . . .

(Doc. 1 ¶ 13; Doc. 1-2, Ex. A, ¶ 1). The indemnity agreement also requires Indemnitor Defendants to post collateral immediately upon demand equal to any reserve account created by DSIC to cover "any liability, claim asserted, suit or judgment under any Bond." (Doc. 1 ¶ 14; Doc. 1-2, Ex. A, ¶ 3).

On October 9, 2001, Slater submitted a plan to York Township for construction of a residential subdivision known as Spring Ridge Phases II & III (the

2

"Subdivision Project"). (Doc. 1 ¶ 15). On November 28, 2001, DSIC issued

Subdivision Improvements Performance Bond No. 526400S (the "subdivision

bond") to York Township, as obligee, on behalf of Slater, as principal, guaranteeing

Slater's completion of certain public improvements for the Subdivision Project. (Id.

¶¶ 17-18; see Doc. 1-3, Ex. B).

In 2003, Slater filed for bankruptcy protection in the United States

Bankruptcy Court for the Middle District of Pennsylvania. (Doc. 1 ¶ 19); see In re

Slater & West, Inc., No. 1-03-BK-1633 (Bankr. M.D. Pa. filed March 20, 2003). DSIC

contends that (1) it was not notified of the bankruptcy action, and (2) it was not

listed as a creditor. (Doc. 1 ¶ 20). On March 25, 2004, Indemnitor Defendants,

Slater, and Charter entered into a stipulation (the "bankruptcy stipulation") by

terms of which Charter assumed responsibility for construction of the Subdivision

Project. (Id. ¶¶ 21, 23; Doc. 1-4, Ex. C). The bankruptcy stipulation required

Charter to exercise good faith to complete both the Subdivision Project and related

public improvements (the "Development Improvements"), and to secure the release

of the subdivision bond upon completion of the Development Improvements. (Doc.

1 ¶¶ 25-26; Doc. 1-4, Ex. C ¶ 5(k)). Charter and Indemnitor Defendants further

agreed to keep the subdivision bond in place during Charter's completion of the

Subdivision Project. (Doc. 1 ¶ 24; Doc. 1-4, Ex. C ¶ 5(k)). According to the

complaint, DSIC was not privy to the bankruptcy stipulation or the terms contained

therein. (Doc. 1 ¶ 22). DSIC alleges that it did not receive notice of the bankruptcy

stipulation until May 27, 2004. (Id. ¶ 27). Consequently, DSIC asserts that it had no

3

obligation to extend coverage of the subdivision bond to Charter's performance of the Development Improvements. (Id. ¶ 28). Nevertheless, DSIC claims that Indemnitor Defendants and Charter induced DSIC to keep the subdivision bond in place by making representations in the bankruptcy stipulation that Charter would complete the Development Improvements and secure a release of the subdivision bond. (Id. ¶ 30; Doc. 1-4, Ex. C ¶ 5(k)).

In 2012, York Township issued a twenty-two page punchlist of Development Improvements that Charter either failed to complete or completed in a defective manner. (Doc. 1 ¶ 31; see Doc. 1-5, Ex. D). On March 23, 2012, York Township provided formal notice to Charter of its defective performance and demanded that Charter cure the identified defects by June 1, 2012. (Doc. 1 ¶ 32; see Doc. 1-6, Ex. E). Charter refused to cure the alleged defects. (Doc. 1 ¶ 33; see Doc. 1-7, Ex. F). York Township subsequently demanded that DSIC complete the Development Improvements under the terms of the subdivision bond. (Doc. 1 ¶ 34). DSIC estimated the cost of completing the Development Improvements to be in excess of $800,000 and accordingly set its reserves in that amount. (Id. ¶¶ 35-36). On June 26, 2012, DSIC demanded that Indemnitor Defendants deposit $800,000 as collateral security, which Indemnitor Defendants refused to do. (Id. ¶¶ 37-38; see Doc. 1-8, Ex. G). In the alternative, DSIC demanded that Indemnitor Defendants complete the Development Improvements. (Doc. 1 ¶ 39). Indemnitor Defendants refused these demands and further refused to cooperate in DSIC's efforts to complete the Development Improvements. (Id. ¶ 40).

On November 6, 2012, DSIC filed a seven-count complaint (Doc. 1) against Indemnitor Defendants and Charter, alleging: (1) breach of contract by Indemnitor Defendants, (id. ¶¶ 41-46); (2) indemnification from Indemnitor Defendants, (id. ¶¶ 47-50); (3) breach of contract by Charter, (id. ¶¶ 51-60); (4) indemnification from Charter, (id. ¶¶ 61-68); (5) negligence by Charter, (id. ¶¶ 69-74); (6) negligent, reckless, and intentional misrepresentation by all defendants, (id. ¶¶ 75-80); and (7) unjust enrichment by all defendants. (Id. ¶¶ 81-88). On January 14, 2013, Charter filed the instant motion to dismiss (Doc. 23) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The motion is fully briefed and ripe for disposition.

## II.   **Jurisdiction and Legal Standard**

The court has jurisdiction over the instant matter because the parties are completely diverse of citizenship and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1).

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). In addition to reviewing the facts contained in the complaint,

the court may also consider exhibits attached to the complaint and matters of public record. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a *prima facie* case of liability, courts should generally grant leave to amend before dismissing a complaint unless amendment would be inequitable or futile. See Grayson v.

6

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.   Discussion

Charter moves to dismiss all five counts asserted by DSIC for the following reasons: (1) DSIC cannot bring a claim for breach of contract because DSIC is not an intended third-party beneficiary of the bankruptcy stipulation; (2) DSIC fails to establish a common law right to indemnification; (3) the economic loss and gist of the action doctrines bar DSIC's negligence claim; (4) DSIC fails to adequately plead claims for negligence and intentional misrepresentation; and (5) DSIC's fails to plead an essential element of its unjust enrichment claim.  The court will address each of these arguments *seriatim*.

### A.   Count III - Claim for Breach of Contract

DSIC alleges that Charter breached certain promises in the bankruptcy stipulation made for DSIC's benefit by failing to complete the Development Improvements and release the subdivision bond.  Charter asserts that the court should dismiss DSIC's claim for breach of contract because DSIC is neither a party to nor an intended third-party beneficiary of the bankruptcy stipulation.  Under Pennsylvania law,[1] an entity does not have standing to sue for breach of contract unless it is a party to the contract or it is an intended third-party beneficiary.

---

[1] The court presides over this case pursuant to diversity jurisdiction.  Sitting in diversity, the court must apply the substantive law of Pennsylvania.  Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000).

<u>Scarpitti v. Weborg</u>, 609 A.2d 147, 149 (Pa. 1992). It is undisputed that DSIC is not a party to the bankruptcy stipulation; therefore, DSIC may pursue a claim for breach of contract only as an intended third-party beneficiary. (Doc. 26 at 7).

In Pennsylvania, there are two tests to determine whether a party has attained the status of an intended third-party beneficiary. First, a party may be an express third-party beneficiary if the parties to the contract explicitly state their desire to benefit the third party in the contract. <u>Spires v. Hanover Fire Ins. Co.</u>, 70 A.2d 828, 830-31 (Pa. 1950), <u>abrogated by</u> <u>Guy v. Liederbach</u>, 459 A.2d 744 (Pa. 1983); <u>see also</u> <u>Mylan, Inc. v. Zorich</u>, No. 1:12-CV-80, 2012 WL 527662, at *5 (W.D. Pa. Feb. 16, 2012). Second, a party may be an implied third-party beneficiary, subject to proof of the following:

> (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

<u>Scarpitti</u>, 609 A.2d at 150 (quoting <u>Guy v. Liederbach</u>, 659 A.2d 744, 751 (Pa. 1983)). The first requirement for implied third-party beneficiary status is a standing requirement vesting the court with discretion to determine whether all parties to the contract intended to benefit the third party. <u>Id.</u>; <u>Burks v. Fed. Ins. Co.</u>, 883 A.2d 1086, 1088 (Pa. Super. Ct. 2005). The second element of proof focuses on the specific nature of contractual promises. In essence, it delineates and restricts the types of claimants who may qualify as implied third-party beneficiaries. <u>Scarpitti</u>,

609 A.2d at 150. Both requirements must be satisfied in order to confer standing

upon a third party for a breach of contract claim. Id.

DSIC asserts that the parties to the bankruptcy stipulation expressly

identified DSIC as a third-party beneficiary. (Doc. 30 at 6). DSIC directs the court's

attention to paragraph 5(k) of the bankruptcy stipulation, which states:

> Financial security has been provided to York Township pursuant to
> Section 509(a) [of] the Pennsylvania Municipalities Planning Code, 53
> P.S. § 10101, *et seq.* ("MPC") by that certain *Subdivision Improvements*
> *Performance Bond* in the amount of $1,568,176.00 . . . ("Insco Bond"),
> for the costs of those [Development Improvements] . . . . The Insco
> Bond will remain in place provided, however, that Charter or its
> designee will in good faith pursue the completion of the Development
> Improvements. When the Development Improvements shall have
> been completed, Charter or the entity designated to acquire the Spring
> Ridge Property shall obtain the release from the financial security of
> the costs of the Development Improvements.

(Doc. 1-4 ¶ 5(k); Doc. 30 at 7). DSIC argues that the reference to the "Insco Bond" is

an express reference to DSIC, and that paragraph 5(k) explicitly sets forth the

parties' intention to benefit DSIC: first, Charter promised to exercise good faith in

order to complete the Development Improvements; and second, Charter promised

to then obtain release of the subdivision bond. (Doc. 30 at 7-8). This argument is

unpersuasive. The reference in paragraph 5(k) to the "Insco Bond" does not

identify DSIC as an intended third-party beneficiary; it simply refers to the

subdivision bond. Mere reference to the subdivision bond does not constitute an

express statement that the parties intended to make DSIC a third-party beneficiary.

See Kinback Corp. v. Quaker Constr. Mgmt., Inc., No. 3:00CV1941, 2001 WL

1231716, at *3 (M.D. Pa. Oct. 16, 2001) (finding that a general provision regarding

defendant's responsibility for costs due to delay did not explicitly confer third-party beneficiary status upon plaintiff affected by delay to bring a breach of contract claim). Hence, the court rejects DSIC's contention that it is an express third-party beneficiary to the bankruptcy stipulation.

Alternatively, DSIC asserts that Charter and Indemnitor Defendants intended to confer third-party beneficiary status at the time of the bankruptcy stipulation and, therefore, DSIC is an implied third-party beneficiary. (Doc. 30 at 10); see Burks, 883 A.2d at 1088. To determine such intent, the court must examine the express terms of the contract. See Waynesborough Country Club of Chester Cnty. v. Diedrich Niles Bolton Architects, Inc., Civil Action No. 07-155, 2008 WL 687485, at *2-3 (E.D. Pa. Mar. 11, 2008); Burks, 883 A.2d at 1091-92; Victoria Gardens Condo. Ass'n v. Kennett Twp., 23 A.3d 1098, 1105-07 (Pa. Commw. Ct. 2011).

According to DSIC, Charter's contractual commitments to complete the Development Improvements and to obtain a release of the subdivision bond reveal the parties' intent to benefit DSIC by relieving DSIC of its obligations under the subdivision bond. (Doc. 30 at 10). In contrast, Charter claims that its sole intent in the bankruptcy stipulation was to protect its own financial interests. (Doc. 33 at 5). Implied third-party beneficiary status is not appropriate when the parties' true intent — to promote their respective interests — confers solely incidental benefits on a third party. See Burks, 883 A.2d at 1092 (finding that, while defendants injured on plaintiff's property would benefit from plaintiff's insurance contract, "the benefit of the contract is not meant to primarily protect these individual's interests"); *In re*

10

Marcus Lee Assocs., L.P., 422 B.R. 21, 33 (Bankr. E.D. Pa. 2009) ("The economic consequences to the third party in the event that the agreement between the contracting parties is breached do not necessarily relate to the controlling question of whether the parties who entered the contract intended and expressed an intention to benefit those claiming to be third-party beneficiaries.") (quoting Hibbs v. K-Mart Corp., 870 F.2d 435 (8th Cir. 1989)) (internal quotation omitted).

The terms and circumstances of the bankruptcy stipulation demonstrate that paragraph 5(k) was intended to convey Indemnitor Defendants' rights to develop the Subdivision Project to Charter, in exchange for Charter's promise to discharge Indemnitor Defendants' preexisting judgment liens. (Doc. 26 at 13-15; Doc. 30 at 5). In other words, Charter gained a development opportunity and relieved Indemnitor Defendants of a significant debt obligation. Thus, paragraph 5(k) of the bankruptcy stipulation was quite clearly a transaction solely intended to promote and protect the financial interests of both parties involved. Any financial benefit that DSIC might have gained from Charter honoring its commitments, or losses that DSIC might have suffered from Charter's failure to do so, is purely incidental.

Moreover, the bankruptcy stipulation contemplated the consequences of Charter's failure to complete the Development Improvements. It expressly limited Charter's liability to $300,000 in an indemnity provision for the benefit of Indemnitor Defendants for any liability Indemnitor Defendants incurred to DSIC. (Doc. 1-4 ¶ 5(k); Doc. 26 at 15, 18). There is no indication that the parties intended Charter to assume Indemnitor Defendants' obligations to DSIC. For the foregoing

11

reasons, the court concludes that Charter and Indemnitor Defendants entered into the bankruptcy stipulation with the intent of advancing their own financial interests, not to confer any benefit upon DSIC. The court declines to recognize DSIC as an intended third-party beneficiary to the bankruptcy stipulation. Therefore, the court will dismiss DSIC's claim for breach of contract.

**B.      Count IV - Claim for Indemnification**

DSIC seeks indemnification pursuant to common law for damages sustained from Charter's failure to complete the Development Improvements.[2] Charter moves to dismiss the claim because no primary-secondary liability relationship exists between Charter and DSIC to invoke the common law right to indemnification.

In Pennsylvania, the common law right to indemnification arises when both primary and secondary liability exist for an injury. <u>Builders Supply Co. v. McCabe</u>, 77 A.2d 368, 370 (Pa. 1951). "It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." <u>Id.</u> "[S]econdary as distinguished from primary liability rests upon a fault that is imputed or constructive only, [1] being based upon some legal obligation between the parties, or [2] arising from some positive rule of statutory or common law or [3] because of a failure to discover or correct a defect or

_____

[2] DSIC has withdrawn its claim for contractual indemnification. (Doc. 30 at 12).

remedy a dangerous condition caused by the act of the one primarily responsible."
Id. at 371. Accordingly, a common law right of indemnification only exists when
there is a special relationship between the two responsible parties, such as
employer and employee, principal and agent, or general contractor and
subcontractor. See id. at 370; Amco Ins. Co. v. Varish Constr., Inc., Civil A. No. 1:09-
CV-1813, 2010 WL 3239395, at *5 (M.D. Pa. July 15, 2010).

In Amco, an insurance company, as subrogee of a hotel, brought a claim
against the general contractor of the hotel after ruptured sprinkler pipes caused
damage to the hotel. Amco, 2010 WL 3239395, at *1. The general contractor filed a
third-party complaint, asserting a claim for indemnification against its
subcontractor. Id. The general contractor alleged that it had relied on the
subcontractor to properly install the alarm system, and that the subcontractor's
deficient installation rendered the subcontractor primarily liable for damages
resulting from the pipe rupture. Id. at *5. The general contractor's liability was
thus based on a failure to discover and correct the defect caused by the
subcontractor. The court denied the motion to dismiss in Amco because the
general contractor had properly pleaded factual allegations established a primary-
secondary liability relationship between the parties. Id.; see also Waynesborough,
2008 WL 687485, at *5-6.

In stark contrast, DSIC's claim for common law indemnification is
conclusory: "Defendant Charter Homes is also obligated to indemnify Developers
for its losses under principles of common law indemnification." (Doc. 1 ¶ 65). The

complaint is devoid of any factual allegations suggesting a relationship between Charter and DSIC that would give rise to a right of indemnification.

In opposition to the motion to dismiss, DSIC asserts that Charter was primarily responsible for completing the Development Improvements and DSIC's liability stemmed only from Charter's failure to complete the improvements. (Doc. 30 at 14). However, the subdivision bond and all related agreements created obligations only between Indemnitor Defendants and DSIC. The bankruptcy stipulation reflected an agreement between Indemnitor Defendants and Charter, to which DSIC was not a party or an intended beneficiary. DSIC does not allege that it delegated its duty to complete the Development Improvements to Charter or that Charter's breach of the duty gave rise to DSIC's liability. Quite simply, there are no factual allegations which would establish a special relationship between Charter and DSIC — arising by legal obligation, operation of law, or failure to discover — to trigger the common law right to indemnification. Accordingly, the court will grant Charter's motion to dismiss Count IV of the complaint.

### C. Count V - Claim for Negligence

In Count V of the complaint, DSIC alleges that Charter breached a duty of care by "negligently, carelessly and recklessly: (a) failing to maintain the Development Improvements; (b) allowing the Development Improvements to deteriorate; and (c) damaging the Development Improvements." (Doc. 1 ¶¶ 71-73). Charter argues that the economic loss doctrine bars DSIC's negligence claim.

The purpose of the economic loss doctrine is to maintain "the separate spheres of the law of contract and tort."[3] <u>N.Y. State Elec. & Gas Corp. v. Westinghouse Elec. Corp.</u>, 564 A.2d 919, 925 (Pa. Super. Ct. 1989). Pursuant to the economic loss doctrine, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." <u>Adams v. Copper Beach Townhome Cmtys., L.P.</u>, 816 A.2d 301, 305 (Pa. Super. Ct. 2003); <u>see also</u> <u>Spivack v. Berks Ridge Corp.</u>, 586 A.3d 402, 405 (Pa. Super. Ct. 1990). An economic loss is any "damage for inadequate value, costs of repair and replacement of defective product, consequential loss of property, *without any claim of personal injury or damage to other property*." <u>American Stores</u>, 648 F. Supp. 2d at 713 (quoting <u>Palco Linings, Inc. v. Pavex, Inc.</u>, 755 F. Supp. 1269, 1276 (M.D. Pa. 1990)). The court notes that property damage must be to "other property," meaning property other than the project which is the basis of the bargain or contract, in order to avoid the application of the economic loss doctrine. <u>American Stores</u>, 648 F. Supp. 2d at 713, 716-17; <u>Longport Ocean Plaza Condo., Inc. v. Robert Cato & Assocs., Inc.</u>, No. CIV.A-00-CV-2231, 2002 WL 2013925, at *5-6 (E.D. Pa. Mar. 18, 2002) (holding that damage to building that was the basis of the bargain with defendant did not constitute damage to other property and the economic loss

---

[3] Negligence claims are subject to dismissal under the economic loss doctrine, regardless of whether privity of contract exists between plaintiff and defendant. <u>See</u> <u>Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc.</u>, 648 F. Supp. 2d 707, 713-14 (E.D. Pa. 2009).

doctrine therefore barred the negligence claim); cf. 2–J Corp. v. Tice, 126 F.3d 539, 540-44 (3d Cir. 1997) (finding that damage to inventory inside collapsed warehouse constituted damage to other property to allow a negligence claim against the manufacturer of the warehouse); Waynesborough, 2008 WL 687485, at *8 (holding that the economic loss doctrine did not bar recovery because the negligent construction of water pipes caused damage to both the building as well as personal property within the building).

The court's decision in American Stores provides a useful illustration of the applicability of the economic loss doctrine. The plaintiff in American Stores sued the designers and builders of defective retaining walls in negligence when the walls failed or showed signs of distress long before the expiration of their 25-year "useful life." American Stores, 648 F. Supp. 2d at 709. The plaintiff sought damages for the cost of repairing or replacing the defective walls. Id. at 712-13. The court held that there was no damage to property other than the purchased retaining walls; therefore, the economic loss doctrine barred recovery for negligence. Id. at 717.

In the instant matter, Charter was required to complete the Development Improvements for the Subdivision Project; thus, the Development Improvements are the basis of the bargain in the bankruptcy stipulation. (Doc. 1 ¶¶ 70-71). However, DSIC alleges property damage only to those same Development Improvements, including, *inter alia*, cracked curbs and sewer pipes, and missing or damaged retainage basin fences. (Doc. 30 at 16). Such property damage does not

constitute "other property" to preclude the application of the economic loss doctrine. Therefore, the economic loss doctrine bars recovery in tort for damage to the Development Improvements.[4] The court will grant Charter's motion to dismiss DSIC's negligence claim under Count V of the complaint.

### D. Count VI - Claims for Negligent and Intentional Misrepresentation

DSIC further alleges that Charter and Indemnitor Defendants intentionally, recklessly, or negligently misrepresented that Charter would complete the Development Improvements and release the subdivision bond. Charter moves to dismiss Count VI of the complaint because DSIC fails to adequately plead claims of negligent and intentional misrepresentation and, alternatively, the gist of the action doctrine bars these claims.

As previously discussed, the court must engage in a three-step process to assess the sufficiency of the complaint: first, identify the elements of the claims; second, separate well-pleaded facts from legal conclusions; and third, determine whether the well-pleaded facts are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 675, 679. Under Pennsylvania law, a claim for intentional misrepresentation must include (1) a representation, (2) which is material to the transaction at issue, (3) made with knowledge of its falsity, or a reckless disregard for its truth or falsity, (4) with the intention of misleading another into relying on

---

[4] Hence, the court need not address Charter's argument regarding the gist of the action doctrine.

the representation, (5) who justifiably relied on the representation, and (6) such reliance proximately caused an injury. <u>Wooding v. United States</u>, 374 F. App'x 309, 312 (3d Cir. 2010); <u>Bortz v. Noon</u>, 729 A.2d 555, 560 (Pa. 1999) (citing <u>Gibbs v. Ernst</u>, 647 A.2d 882, 889 (Pa. 1994)). Negligent misrepresentation differs only insofar as the false representation must have been "made under circumstances in which the misrepresenter ought to have known its falsity," instead of with knowledge or reckless disregard for its falsity. <u>Bortz</u>, 729 A.2d at 561.

A complaint fails to state a claim for which relief may be granted when it tenders no more than "naked assertion[s] devoid of further factual enhancement." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557). Detailed factual allegations are not necessary, but the complaint must consist of more than an "'unadorned, the-defendant-unlawfully-harmed-me accusation.'" <u>Argueta v. U.S. Immigration and Customs Enforcement</u>, 643 F.3d 60, 72 (3d Cir. 2011) (quoting <u>Iqbal</u>, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

DSIC's claim against Charter fails to meet the pleading requirements of Federal Rule of Civil Procedure 8(a). Count VI states, *inter alia*:

76. Defendants intentionally, negligently or recklessly made material misrepresentations to Plaintiff Developers that Defendant Charter Homes would complete the Development Improvements, would ensure release of Plaintiff Developer's Subdivision Bond and would act in good faith in performing these obligations.

77. At the time that Defendants made the aforesaid representations, they knew or should have known that the representations were false and/or Defendants made the representations with reckless disregard for the truth.

78. Plaintiff Developers justifiably relied upon Defendants' aforesaid material misrepresentations in making the decision not to withdraw the Subdivision Bond.

79. Plaintiff Developers justifiably relied upon Defendants' aforesaid misrepresentations in making the decision to extend the Subdivision Bond to guarantee Charter Homes' performance of the Development Improvements.

80. Plaintiff Developers suffered, and continues to suffer, damages as a direct and proximate result of Defendants' intentional and/or negligent misrepresentations.

(Doc. 1 ¶¶ 76-80).

The allegations in Count VI of the complaint amount to little more than a recitation of the elements of an intentional or negligent misrepresentation claim with minimal factual support. See Twombly, 550 U.S. at 555 (holding that the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Specifically, DSIC asserts that Charter made representations that it would complete the Development Improvements and ensure the release of the subdivision bond. (Doc. 1 ¶ 76). However, the complaint sets forth no facts to support a claim that Charter knew or

19

ought to have known that the representations were false at the time Charter made

the representations.  It is insufficient to allege that Charter eventually failed to keep

its commitments.  <u>See</u> <u>Fidurski v. Hammill</u>, 195 A. 3, 4 (Pa. 1937) ("[A]n

unperformed promise does not give rise to a presumption that the promisor

intended not to perform when the promise was made."); <u>Bash v. Bell Tel. Co. of Pa.</u>,

601 A.2d 825, 832 (Pa. Super. Ct. 1992).

DSIC also fails to plead any facts that Charter intended to induce DSIC's

reliance on its alleged misrepresentation.  At most, DSIC suggests that Indemnitor

Defendants and Charter in fact induced DSIC to keep the subdivision bond in

place.  (Doc. 1 ¶ 30).  However, DSIC alleges other facts in the complaint that

contradict both assertions.  DSIC clearly states that it was unaware of the

bankruptcy stipulation containing the alleged representations for at least two

months after Charter and Indemnitor Defendants reached an agreement.  (<u>Id.</u> ¶¶ 21-

27).  There is no indication that Indemnitor Defendants and Charter intended to

induce DSIC's reliance on, or that the parties induced DSIC's reliance on, the

bankruptcy stipulation.  Thus, DSIC fails to plead essential elements of negligent or

intentional misrepresentation with the factual specificity necessary to show a

plausible claim for relief.[5]  The court, in its discretion, will grant Charter's motion to

dismiss Count VI without leave to amend because amendment would be futile

_____

[5] As a result of this conclusion, the court need not reach Charter's second
argument regarding the gist of the action doctrine.

based on DSIC's own contradictory averments.  See Grayson, 293 F.3d at 108;

Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983) (stating that

amendment is futile if the amended complaint would not survive a motion to

dismiss).

### E.    Count VII - Claim for Unjust Enrichment

DSIC asserts that Charter was unjustly enriched from the subdivision bond.

Charter moves to dismiss this claim for failure to plead an essential element of

unjust enrichment.[6]  The equitable doctrine of unjust enrichment contemplates that

one "who has been unjustly enriched at the expense of another must make

restitution to the other."  Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa.

2006) (quoting Binns v. First Nat'l Bank of Cal., Pa., 80 A.2d 768, 775 (Pa. 1951)).

The elements for unjust enrichment are: (1) the plaintiff conferred a benefit upon

the defendant; (2) the defendant achieved a benefit; and (3) the defendant accepted

and retained the benefit under such circumstances that retention would be

inequitable without payment of value.  Bunnion v. Consol. Rail Corp., 108 F. Supp.

2d 403, 427 (E.D. Pa. 1999), aff'd without op. 230 F.3d 1348 (3d. Cir. 2000); Styer v.

Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).  The crux of an unjust enrichment

---

[6] Charter urges the court to dismiss the claim for unjust enrichment because
DSIC may not recover under quasi-contractual theories when the transaction in
dispute is subject to an express contract.  (Doc. 26 at 36 n.6).  The court has
concluded that DSIC is not an intended third-party beneficiary and that the breach
of contract claim may not proceed.  See *supra* p. 12.  Therefore, the court will
address the merits of the complaint as it relates to this claim.

claim is whether the benefit to the defendant is unjust; the doctrine does not apply simply because the defendant may have benefitted from the plaintiff's actions. Styer, 619 A.2d at 350-52 (denying attorney's unjust enrichment claim against an attorney who subsequently represented the same client even though the second attorney benefitted from the prior attorney's work).

In the complaint, DSIC alleges that Charter was unjustly enriched by continued coverage from the subdivision bond. Charter realized the benefit of the subdivision bond in the form of profits on the Subdivision Project. (Doc. 1 ¶¶ 81-88). The court finds that these factual allegations are sufficient to satisfy the first two elements for a plausible claim of unjust enrichment. DSIC further asserts that Charter's acquisition and retention of the benefits was inequitable for three reasons: (1) York Township would not have approved Charter's succession to the Subdivision Project without continued coverage of the subdivision bond; (2) Charter would not have realized a profit from the Subdivision Project without the subdivision bond; and (3) Charter did not comply with its obligations to indemnify DSIC, to exercise good faith to complete the Development Improvements, and to effectuate a release of the subdivision bond. (Id. ¶¶ 82-88). In sum, DSIC seeks restitution on the grounds that Charter received the benefit of the original surety agreement without undertaking the costs or fulfilling its obligations under the bankruptcy stipulation.

Charter asserts that this claim must fail because any benefit it received from DSIC was not unjustly retained.  Charter contends that it did not induce DSIC to "extend" coverage to Charter; rather, DSIC had already issued the subdivision bond and was required to keep it in place until completion of the Development Improvements under the terms of the subdivision bond.  (Doc. 26 at 37-38).  This argument is inapposite at this stage in the proceedings.  Charter's retention of the benefits from the subdivision bond may be inequitable.  DSIC alleges that Charter and Indemnitor Defendants made representations regarding the completion of the Development Improvements, release of the subdivision bond, and indemnification for certain costs, losses and expenses.  (Doc. 1 ¶¶ 82-83).  Despite its failure to comply with these representations, Charter received the benefit of an existing subdivision bond and purportedly realized a profit from the Subdivision Project.  Thus, at present, DSIC has set forth sufficient factual allegations to support a plausible claim for unjust enrichment.  Accordingly, the court will deny Charter's motion to dismiss Count VII of the complaint.

**IV.**    <u>**Conclusion**</u>

For the foregoing reasons, the court will grant in part and deny in part Charter's motion to dismiss (Doc. 23).

An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Date:        December 11, 2013